130 Ill. App.3d 6 (1985)
473 N.E.2d 1009
In re J.R. et al., Minors (The People of the State of Illinois, Petitioner-Appellee,
v.
Thomas Milner et al., Respondents; Annette Robinson, Respondent-Appellant).
No. 3-84-0099.
Illinois Appellate Court  Third District.
Opinion filed January 21, 1985.
Florence Bennett, of Peoria, for appellant.
John A. Barra, State's Attorney, of Peoria (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.
Judgment affirmed.
JUSTICE STOUDER delivered the opinion of the court:
The respondent-appellant, Annette Robinson, appeals from the trial court's order terminating her parental rights as to her children, Tamara, Jacoby, Tiffany, and Taryn (hereinafter the children). We affirm.
*7 On May 2, 1983, the Illinois Department of Children and Family Services (DCFS) brought a supplemental petition (the petition), alleging, inter alia, that the children were abused and neglected under the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 702-4), and that the respondent was an unfit parent as defined in the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 705-9) and the Adoption Act (Ill. Rev. Stat. 1983, ch. 40, par. 1501(D)). The petition was based on the allegations in several petitions first filed in December 1982, prior to the birth of Tiffany and Taryn, who are twins.
The petition alleged, inter alia, that the respondent and Thomas Milner were unfit parents in that they were guilty of extreme or repeated cruelty to the children; they failed to protect the children from conditions within the children's environment injurious to the children's welfare; they had committed neglect of or misconduct towards the children; and they were depraved persons.
The petition made the following specific allegations. According to the petition, Thomas committed battery against Tamara in September 1981. The respondent, with knowledge of that battery, allowed Thomas in 1982 to live in the children's residence. The petition further alleged that in 1982 Thomas committed the murder of Shamar, the children's sibling. The respondent, with knowledge of Shamar's death, allowed Thomas to remain in the children's residence. Together with Thomas, then, the respondent concealed Shamar's body in the residence for several weeks. All of the events recited in the petitions occurred prior to the 1983 birth of the twins.
The trial court made positive findings on each of the above allegations. The court also found that it was in the best interest of the children that all the respondent's parental rights be terminated. Pursuant to those findings the court terminated the respondent's parental rights and appointed a DCFS guardian with power to consent to the children's adoption.
The Juvenile Court Act provides that when a court finds it is in the best interests of a minor it may terminate parental rights with respect to the minor. However, the court may terminate parental rights only after finding upon clear and convincing evidence that a parent who does not consent to the minor's adoption is "an unfit person." (Ill. Rev. Stat. 1983, ch. 37, par. 705-9(2).) The Act relies upon the definition of a "person unfit to have a child" provided in the Adoption Act. Ill. Rev. Stat. 1983, ch. 40, par. 1501(D).
The respondent's first argument on appeal is that occurrences prior to the birth of the twins may not serve as the factual basis for the termination of her parental rights towards those two children. In *8 her argument, the respondent points out that the twins have at no time since their birth been in the custody of Thomas or the respondent. The respondent also observes that in the instant proceedings the State presented no evidence of the respondent's care of or attitude towards the twins.
Normally, a finding as to unfitness of parents would allow the trial court to terminate the parental rights of all the children. (In re Flynn (1974), 22 Ill. App.3d 994, 318 N.E.2d 105.) We, however, are aware of no authority which directly addresses whether evidence supporting unfitness in regard to a specific child may be based solely upon events occurring before the child's birth. Perhaps because of the absence of case law directly on point, the parties have focused their discussion before this court on cases concerning determinations of child neglect rather than cases concerning determinations of parental unfitness.
The respondent analogizes the instant case to In re Nyce (1971), 131 Ill. App.2d 481, 268 N.E.2d 233, and In re Butt (1979), 76 Ill. App.3d 587, 395 N.E.2d 1. In Nyce, the trial court found that the minor child Nyce was neglected under the Juvenile Court Act. The child's mother appealed and the appellate court reversed the finding of neglect where the mother had never had custody of the child. In Butt, the trial court considered evidence of the respondent mother's mistreatment of her stepchild. The court then found that the respondent's two children by birth, including an infant of whom the respondent had never had custody, were neglected. The appellate court reversed the trial court's judgment and commented separately on the impropriety of termination as to the infant.
We observe that Nyce and Butt are factually distinct from the instant case. In Nyce, the trial court's finding of neglect was based upon speculative testimony on the mother's incapacity to care for any child. The court had no evidence before it that the mother had acted inappropriately concerning a child in her care or custody. In Butt, the appellate court emphasized the seemingly unique circumstances of the mistreatment of the respondent's stepchild alone. We further observe that the courts have tempered the Nyce decision in later cases so that "[w]hen faced with evidence of prior abuse by parents, the juvenile court should not be forced to refrain from taking action until each particular child suffers an injury." In re Brooks (1978), 63 Ill. App.3d 328, 339, 379 N.E.2d 872, 881.
 1 The respondent's argument does not persuade us. The Juvenile Court Act provides for termination of a respondent's parental rights when he or she is found to be a person unfit to have a child. That Act does not demand that a respondent with several children be *9 shown unfit as to each subject child before rights to all children may be terminated. We hold that evidence supporting a parent's unfitness towards some of his or her children may serve as a basis for termination of parental rights towards all of his or her children. Further, we so hold even when the supporting evidence, as here, relates to events all occurring prior to the birth of some of the children.
 2 The respondent's second argument on appeal concerns whether evidence which had been introduced during a previous adjudication of neglect was properly considered at the instant adjudicatory hearing on parental unfitness. The neglect petition contained allegations that in September 1981, Thomas grabbed and shook the respondent's baby, Tamara, and thereby caused fracture of Tamara's right humerus and both her knees.
In December 1981, after considering the neglect petition, the court found that Thomas was an unfit parent and that the children in whose interests the petition was brought were neglected. The court further found that the respondent had not directly caused any injury to the children and that she was fit to care for them.
During the trial in the instant cause, and over the respondent's objections, the court heard the State's evidence concerning the events underlying the neglect petition. On appeal the respondent argues that the doctrine of res judicata barred the State from relitigating the facts underlying the neglect petition. The respondent cites no authority which specifically holds that a court's juvenile adjudication on certain evidence precludes cumulative consideration of that evidence in later juvenile proceedings. We find no error.
At the hearing on the instant petition, the court received evidence that in 1982, after adjudication of the neglect petition, the respondent allowed Thomas to rejoin her household. At that time Thomas had been released from a prison term related to the battery of the respondent's child which was alleged in the neglect petition. The court here also received evidence that while Thomas was then living in the respondent's household he murdered one of the respondent's children.
We previously have held that facts underlying a previous juvenile adjudication may be presented at a subsequent juvenile proceeding. (In re Robertson (1977), 45 Ill. App.3d 148, 359 N.E.2d 491.) Here, the evidence underlying the neglect petition was necessary for the court's full understanding of that evidence which developed following adjudication on the neglect petition. The evidence in the neglect petition also gave the court a proper historical context in which to consider if the respondent was fit. See In re Adoption of Kleba (1976), 37 Ill. App.3d 163, 345 N.E.2d 714; In re Austin (1978), 61 Ill. App.3d 344, *10 378 N.E.2d 538.
The court here did not attempt to reevaluate whether the neglect petition established that the subject children were neglected or whether the underlying facts established that the respondent was an unfit parent. Rather, the court considered the evidence underlying the neglect petition cumulatively to evaluate whether, based on that and further evidence, Thomas and the respondent were unfit parents. The evidence was properly before the court.
 3 The respondent's third and final argument is that there was not clear and convincing evidence that she is an unfit parent and that it was in the best interests of the children that her parental rights be terminated. We disagree.
A finding of unfitness will not be reversed unless it is against the manifest weight of the evidence. (In re Brown (1981), 86 Ill.2d 147, 427 N.E.2d 84.) The decision to terminate parental rights rests within the sound discretion of the trial court, and on appeal we will not interfere with its judgment absent an abuse of discretion. In re Dalton (1981), 98 Ill. App.3d 902, 424 N.E.2d 1226.
The evidence at the trial established that Thomas committed a battery against a child of the respondent. The evidence further established that despite the respondent's apparent recognition that Thomas was dangerous to the children, the respondent permitted Thomas to reside with her and the children after he was released from prison. While Thomas was again living with the respondent he murdered one of the respondent's children. The respondent then failed to report the murdered child's death. She also both allowed the child's body to remain in the residence with her other children and lied to the police to conceal the location of the dead child's body.
Upon consideration of those facts, we do not find that it was against the manifest weight of the evidence for the court to terminate the respondent's parental rights as to each of the four children.
For the foregoing reasons, the judgment of the circuit court of Peoria County is hereby affirmed.
Affirmed.
SCOTT and BARRY, JJ., concur.