806 N.E.2d 292 (2004)
346 Ill. App.3d 1034
282 Ill.Dec. 317
In re J'AMERICA B., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
Elunder D., Respondent-Appellant).
No. 2-03-0883.
Appellate Court of Illinois, Second District.
March 18, 2004.
*296 Donald P. Sullivan (Court-appointed), Rockford, for Elunder D.
Paul A. Logli, Winnebago County State's Attorney, Rockford, Martin P. Moltz, Deputy Director, State's Attorneys Appellate Prosecutor, Elgin, Paul Benjamin Linton, Northbrook, for the People.
Justice GILLERAN JOHNSON delivered the opinion of the court:
The respondent, Elunder D., appeals from the July 23, 2003, order of the circuit court of Winnebago County terminating her parental rights to her minor child, J'America B. On appeal, the respondent contends that the trial court erred in: (1) denying her motion to strike the part of the State's petition to terminate her parental rights that referred to the death of her seven-month-old cousin; (2) finding that she is depraved; and (3) failing to admonish her properly. We affirm.
On February 7, 1995, the respondent, who was 10 years old at the time, was adjudicated delinquent (705 ILCS 405/5-3(1) (West 1994)) for having committed the offenses of aggravated battery (720 ILCS 5/12-4(a) (West 1994)), aggravated criminal sexual assault (720 ILCS 5/12-14(b)(2)(i) (West 1994)), and involuntary manslaughter (720 ILCS 5/9-3(a) (West 1994)), against her seven-month-old cousin. The offenses of aggravated battery and aggravated criminal sexual assault were based on the respondent's conduct in inserting a popsicle stick into the anus of her seven-month-old cousin. The offense of involuntary manslaughter was based on the respondent's conduct in smothering her cousin, causing his death. On September 1, 1998, the State filed a neglect petition alleging that the respondent's daughter, J'America B., who had been born four days earlier to the 13-year-old respondent, was in an environment that was injurious to her welfare. The trial court granted the State's petition and entered a temporary custody order transferring guardianship and custody of J'America to the Department of Children and Family Services (DCFS).
On April 14, 1999, J'America was declared a ward of the court and placed in the legal custody and guardianship of DCFS. On the same date, the State filed a petition to terminate the respondent's parental rights. The petition alleged two counts: (1) depravity in that the respondent had been convicted of the offense of aggravated criminal sexual assault of her seven-month-old cousin (750 ILCS 50/1(D)(i)(5) (West 1998)); and (2) depravity in that the respondent had placed a popsicle stick in the anus of a seven-month-old child.
A fitness hearing was held on September 7, 2000. After taking judicial notice of the respondent's delinquency adjudications, the trial court held that the conduct involving the popsicle stick created a presumption of unfitness under the Adoption Act (750 ILCS 50/1(D)(i)(5) (West 2000)). This presumption shifted to the respondent the burden of proof and the burden of going forward with the evidence on the issue of fitness with respect to count I. At the conclusion of the fitness hearing, the trial court found that the respondent had not overcome the presumption of unfitness with respect to count I. However, with respect to count II, the trial court found that the State had not "adequately proven that a 10-year-old under the [respondent's] circumstances would have the necessary state of mind or the ability to form the requisite intent to establish depravity." Accordingly, the trial court dismissed count II. Following a best interests hearing, the trial court terminated the respondent's parental rights.
*297 On direct appeal, this court vacated the trial court's judgment that the respondent was unfit. See In re J'America B., No. 2-01-0586 (2001) (unpublished order under Supreme Court Rule 23). This court explained that the trial court erred when it found that, under the Adoption Act, a presumption of unfitness arose from the respondent's adjudication of delinquency for aggravated criminal sexual assault of a child. This court explained that the statutory presumption of unfitness applies only to a criminal conviction, not an adjudication of delinquency. As such, this court reversed the order terminating the respondent's parental rights and remanded the cause for further proceedings. Following remand, the State filed a series of amended petitions to terminate the respondent's parental rights. The fourth amended petition contained four counts on which the State alleged that the respondent was unfit to be a parent. Count IV of the fourth amended petition, the only count on which the respondent was found unfit, alleged that the respondent was depraved due to her (1) continuing propensity to steal; (2) disregard for human life, which in one case resulted in the death of a child and in another resulted in the delay of needed medical care; and (3) repeated violations of her probation terms. The State indicated that it would present evidence that the respondent was responsible for the suffocation and death of her seven-month-old cousin. The respondent's counsel moved to strike the portion of the State's petition that referred to the death of the respondent's seven-month-old cousin, on the grounds of collateral estoppel and res judicata. The respondent's counsel argued that the State should not be allowed to present evidence that could have been the basis for the respondent's alleged depravity at the first fitness hearing. The trial court denied the respondent's motion to strike.
Between April 4 and May 29, 2004, the trial court conducted a fitness hearing on the State's fourth amended petition to terminate the respondent's parental rights. At the hearing, Bobby Smith testified that he is a loss prevention associate at a Kohl's department store in Rockford, Illinois. On February 2, 2003, he caught the respondent shoplifting from the store and he notified the police. Richard Cunningham, a Rockford police officer, testified that he was called to the Kohl's department store on February 2, 2003, due to a shoplifting complaint. He arrested the respondent for felony retail theft.
Retired Rockford police officer Dennis Woody testified that on August 3, 1994, he took a statement from the respondent concerning the death of her seven-month-old cousin. In this statement, which was admitted into evidence, the respondent indicated that she was caring for her young cousin. She fed him some cereal and gave him a bath. Thereafter, she gave the baby a bottle and put him on her bed. She decided to eat a grape popsicle and brought the popsicle stick back to her bedroom. She discovered that the baby had "pooped" and some of it was on her bed. She cleaned up the mess. She said she became angry thinking about how she had been abused by her uncle and so she took the popsicle stick and put it in her cousin's anus. She said the baby whined a little but then went back to sleep. She said she tried to get the popsicle stick back out, but it was too far in.
Officer Woody further testified that the autopsy report indicated that the insertion of the popsicle stick was not the cause of the baby's death. Rather, the report indicated that the baby's death was due to asphyxiation from suffocation by smothering. He further testified that he had asked the respondent about this, but she denied smothering the baby.
*298 The respondent's probation officer, Brenda Johnson of the Winnebago County Juvenile Probation Department, testified that the respondent was put on probation in February 1995 and was discharged from probation in January 2002. Johnson testified that the respondent received sexabuse victim and sex offender services through Family Advocate and residential services through The Mill and Indian Oaks Academy. Johnson testified that she did not believe that the respondent was progressing with the counseling treatment at The Mill, so the respondent was transferred to Indian Oaks for a higher level of sex offender treatment. Johnson further testified that during counseling, the respondent took responsibility for the death of her baby cousin. However, the respondent did not provide details surrounding her responsibility. The respondent violated her probation in 1996 when she was charged with felony retail theft. She spent 3 days in detention and was given 20 hours of public service work. In January 1998, a rule to show cause was filed. The respondent was placed in detention based on reports from The Mill and Family Advocate of curfew violations, truancy, stealing her mother's car, and unsupervised contact with her brother. Finally, Johnson testified that although the respondent was guilty of serious probation violations, her behavior was generally good while she was in residential care. As such, Johnson had recommended successful discharge. However, the trial court did not terminate the respondent's probation successfully because the respondent, while still a minor, became pregnant twice while on probation.
The respondent testified as an adverse witness. Despite the adjudication of delinquency, the evidence of the admissions she had made in sex offender therapy, and the circumstantial evidence of her guilt, the respondent denied that she had smothered her baby cousin to death. She admitted violating her probation by stealing her mother's car, staying out all night, and not going to school. However, she refused to answer questions about the felony charges of retail theft. She testified that she did not know whether she intended to maintain her relationship with her husband. Her husband was in prison for causing multiple injuries to a three-month-old baby who was living with the respondent and her husband. The respondent was not sure if her husband had hurt the baby. Her husband told her that the baby was injured as a result of falling off the bed. Finally, she testified that she did what she could for the baby; she looked for the mother to get medical help for the baby. When she found the baby's mother, the mother did not want to take the baby to the hospital. Consequently, the respondent did not take the baby to the hospital until the next day.
Deborah McKinney, a DCFS investigator, testified that she had investigated the injuries to the three-month-old baby who was in the care of the respondent and her husband. McKinney received a call concerning the baby on September 17, 2002. After an investigation of the baby's injuries, her report indicated that the respondent's husband was responsible for several fractures to the baby, including a head fracture and a significant femur fracture. Her report was unfounded as to the respondent. Originally, McKinney had initiated a safety plan that barred the respondent from contact with her second child. McKinney testified that the respondent's second child, a boy, was under the guardianship of his paternal grandparents. However, the grandparents regularly allowed the respondent and her husband to provide care for their son. McKinney testified that the respondent complied with the safety plan and that contact between the respondent and her son was reestablished *299 once the investigation was completed.
Paul White, a private clinical social worker on contract with DCFS who provided services to the respondent from September 1998 to October 2002, testified that the respondent successfully completed the residential treatment program at The Mill. Thereafter, the respondent was sent to Indian Oaks for further residential treatment. We note that this testimony contradicted the testimony of the respondent's probation officer, Brenda Johnson, who testified that the respondent was transferred to Indian Oaks because she was not progressing with the treatment at The Mill. Indian Oaks specializes in treating juvenile sex offenders and victims of sexual abuse. White further testified that his counseling with the respondent pertained to her visits with J'America and the stress associated with the petition to terminate her parental rights. His assessment of the respondent's maturity and parenting skills was positive. He believed that the respondent had sufficient counseling to prepare her to be a fit mother. Furthermore, based upon his extensive hours of counseling the respondent and seeing her interaction with J'America, White did not believe that the respondent posed a risk to children. On cross-examination, White acknowledged that the best indicator of the respondent's productivity as an adult was not what she had told her counselors but, rather, how she was actually living her life.
The respondent's grandmother testified that the night that the respondent's sevenmonth-old cousin had died, the respondent had carried him to her. At first he looked alright, but then she noticed that he was not breathing properly. The child had a history of breathing problems, so she called the paramedics. The grandmother testified that she was aware that the respondent had been a victim of sex abuse.
The respondent started receiving counseling services two years before her cousin's death. Finally, she testified that she was not aware of any other incidents that would cause her to fear that the respondent would harm other children.
The respondent testified on her own behalf. She testified that she was the mother of J'America. She also testified that she had been sexually abused by a relative. The abuse started when she was six or seven years old and it occurred possibly more than 20 times. Following the death of her seven-month-old cousin, she lived in different placements, including detention, foster care, relative placement, home, and residential schooling. She was on probation until she was 18 years old. She believed that she had made a lot of progress since the death of her cousin, and she believed that she had provided the best for the three-month-old who was in her care. She testified that she had a support system in place and could thus provide proper care for her children. Finally, in response to questions concerning the death of her seven-month-old cousin, she acknowledged that she was alone with him on the night of his death; however, she had no explanation for his suffocation.
On June 5, 2003, the trial court dismissed the first three counts of the State's fourth amended petition to terminate the respondent's parental rights. However, as to count IV, the trial court found that the State had demonstrated by clear and convincing evidence that the respondent was depraved. Following a best interests hearing, the trial court determined that it was in J'America's best interests that the respondent's parental rights be terminated. The respondent filed a timely notice of appeal.
The respondent's first contention on appeal is that the trial court erred in denying her motion to strike the portion of *300 the State's petition alleging that she was responsible for the death of her sevenmonth-old cousin. Specifically, the respondent argues that because this issue could have been litigated in a prior proceeding to terminate her parental rights, the State was barred by res judicata and collateral estoppel from relitigating this issue. As such, the respondent contends that the State is barred from arguing that she is depraved on this basis.
A trial court's determination that a parent is unfit is entitled to great deference and will not be disturbed unless it is contrary to the manifest weight of the evidence or constitutes a clear abuse of discretion. In re Kenneth F., 332 Ill. App.3d 674, 677, 266 Ill.Dec. 189, 773 N.E.2d 1259 (2002). Nevertheless, questions of law are reviewed de novo. Kenneth F., 332 Ill.App.3d at 677, 266 Ill.Dec. 189, 773 N.E.2d 1259. The applicability of the doctrines of res judicata and collateral estoppel constitutes a question of law.
"The doctrine of res judicata provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." Nowak v. St. Rita High School, 197 Ill.2d 381, 389, 258 Ill.Dec. 782, 757 N.E.2d 471 (2001).
For the doctrine of res judicata to apply, the following three requirements must be satisfied: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of causes of action; and (3) an identity of parties or their privies. Nowak, 197 Ill.2d at 390, 258 Ill.Dec. 782, 757 N.E.2d 471. Different claims are considered part of the same cause of action if they arise from a single group of operative facts. Terry v. Watts Copy Systems, Inc., 329 Ill.App.3d 382, 387, 263 Ill.Dec. 708, 768 N.E.2d 789 (2002). However, exceptions to the application of res judicata exist (Terry, 329 Ill.App.3d at 388, 263 Ill.Dec. 708, 768 N.E.2d 789), and the doctrine will not be applied where it would be fundamentally unfair to do so (Nowak, 197 Ill.2d at 390, 258 Ill.Dec. 782, 757 N.E.2d 471).
Furthermore, res judicata is an equitable doctrine designed to prevent the multiplicity of lawsuits between the same parties and involving the same facts and the same issues. Torcasso v. Standard Outdoor Sales, Inc., 157 Ill.2d 484, 490-91, 193 Ill.Dec. 192, 626 N.E.2d 225 (1993). Res judicata should be applied only as fairness and justice require, and only to facts and conditions as they existed at the time judgment was entered. Carey v. Neal, Cortina & Associates, 216 Ill.App.3d 51, 64, 159 Ill.Dec. 551, 576 N.E.2d 220 (1991). In any event, it is well established that res judicata should not be applied strictly in custody and visitation matters. In re Marriage of Fields, 283 Ill.App.3d 894, 901-02, 219 Ill.Dec. 420, 671 N.E.2d 85 (1996). Courts should be cautious in determining when to apply res judicata in child custody cases. In re Marriage of Weaver, 228 Ill.App.3d 609, 616, 170 Ill. Dec. 207, 592 N.E.2d 643 (1992). Res judicata should not be strictly applied to bar evidence when the most important consideration is the welfare of the child. Weaver, 228 Ill.App.3d at 616, 170 Ill.Dec. 207, 592 N.E.2d 643.
The doctrine of collateral estoppel applies when a party participates in two consecutive cases arising on different causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction. Nowak, 197 Ill.2d at 389-90, 258 Ill.Dec. 782, 757 *301 N.E.2d 471. The adjudication of the fact or question in the first cause will be conclusive of the same question in the later suit, but the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined, and not as to other matters which might have been litigated and determined. Nowak, 197 Ill.2d at 390, 258 Ill. Dec. 782, 757 N.E.2d 471. The minimum requirements for the application of collateral estoppel are: (1) the issue decided in the prior adjudication is identical to the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. Nowak, 197 Ill.2d at 390, 258 Ill.Dec. 782, 757 N.E.2d 471.
Application of the doctrine of collateral estoppel must be narrowly tailored to fit the precise facts and issues that were clearly determined in the prior judgment. Nowak, 197 Ill.2d at 390-91, 258 Ill.Dec. 782, 757 N.E.2d 471. Collateral estoppel is an equitable doctrine. Nowak, 197 Ill.2d at 391, 258 Ill.Dec. 782, 757 N.E.2d 471. Even where the threshold elements of the doctrine are satisfied, collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped. Nowak, 197 Ill.2d at 391, 258 Ill.Dec. 782, 757 N.E.2d 471. In deciding whether the doctrine of collateral estoppel is applicable in a particular situation, a court must balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his case. Nowak, 197 Ill.2d at 391, 258 Ill.Dec. 782, 757 N.E.2d 471. In determining whether a party has had a full and fair opportunity to litigate an issue in a prior action, those elements which comprise the practical realities of litigation must be examined. Nowak, 197 Ill.2d at 391, 258 Ill.Dec. 782, 757 N.E.2d 471.
Based on these principles, we do not believe that the doctrines of res judicata and collateral estoppel are applicable in the present case. First, the doctrines do not apply because the trial court's decision at the September 7, 2000, fitness hearing was not a final judgment on the merits. Although the trial court determined that the State did not prove depravity under count II at that point in time, that does not, in itself, render the order final. (In re A.H.), 207 Ill.2d 590, 594, 280 Ill.Dec. 290, 802 N.E.2d 215 (2003). The possibility still exists that the rights of a parent could be terminated in the future. A.H., 207 Ill.2d at 595, 280 Ill.Dec. 290, 802 N.E.2d 215. Furthermore, a judgment is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment. In re Alexis H., 335 Ill.App.3d 1009, 1012, 270 Ill.Dec. 583, 783 N.E.2d 158 (2002). In the present case, the appellate court did not affirm the trial court's judgment. Rather, the appellate court vacated the judgment finding the respondent unfit, reversed the order terminating her parental rights, and remanded the case for further proceedings. As such, the appellate court mandate directed the trial court to conduct further proceedings. Consequently, the judgment of the trial court was not a final judgment on the merits for the purposes of res judicata and collateral estoppel.
Moreover, courts have generally held that the doctrines of res judicata and collateral estoppel cannot be used to bar evidence that was or could have been considered at a previous termination proceeding, when a second petition to terminate parental rights is supported by evidence of activities that occurred after the first hearing. *302 See People ex rel. J.R., 711 P.2d 701, 703 (Colo.App.1985) (res judicata does not prohibit State from filing subsequent petition to terminate parental rights when additional facts arise after first petition is denied); In re Juvenile Appeal, 83DE, 190 Conn. 310, 318, 460 A.2d 1277, 1282 (1983) (the doctrines of collateral estoppel and res judicata ordinarily afford very little protection to a parent who has once successfully resisted an attempt to terminate his rights to a child); In re A.S., 12 Kan. App.2d 594, 601, 752 P.2d 705, 711 (1988) (a trial court must be free to examine all of the circumstances, evidence, prior facts, prior orders, and other relevant information in order to arrive at a correct conclusion concerning parental fitness); In re V.B., 220 Neb. 369, 372, 370 N.W.2d 119, 122 (1985) (when a second termination proceeding is not itself barred, the proof is not limited by res judicata or collateral estoppel principles to facts or evidence that was not considered in, or that came into being after, the first proceeding); State ex rel. Juvenile Department v. Newman, 49 Or.App. 221, 226, 619 P.2d 901, 904-05 (1980) (if new facts justify the filing of a new termination proceeding, evidence and facts that were or could have been considered in the earlier proceeding can be considered or reconsidered in the later one). In Illinois, it has been held that facts underlying a previous juvenile adjudication may be presented at a subsequent juvenile proceeding. In re J.R., 130 Ill. App.3d 6, 9, 85 Ill.Dec. 410, 473 N.E.2d 1009 (1985). In J.R., despite the mother's contention that such evidence was barred by res judicata, the reviewing court held that the trial court could consider the evidence underlying a previous neglect petition cumulatively to evaluate whether, based on that and further evidence, the parents were unfit. J.R., 130 Ill.App.3d at 9-10, 85 Ill.Dec. 410, 473 N.E.2d 1009.
Accordingly, any evidence that was or could have been considered at the respondent's first fitness hearing could properly be considered by the trial court at her second fitness hearing. The evidence underlying the issue of depravity at the first fitness hearing was necessary for the trial court's full understanding of the evidence at the second fitness hearing and also gave the trial court a proper historical context in which to consider if the respondent was fit to be a parent. See J.R., 130 Ill.App.3d at 9, 85 Ill.Dec. 410, 473 N.E.2d 1009. Furthermore, at the second fitness hearing, the State presented significant additional evidence of the respondent's depravity that was not available at the first fitness hearing. That evidence included the respondent's neglect in failing to obtain prompt medical care for a threemonth-old baby who had been left in her care in September 2002, and her continued propensity to steal, as reflected in the felony retail theft incident of February 2003. This additional evidence was properly considered along with the previous evidence of the respondent's depravity. The trial court did not attempt to reevaluate whether the respondent was unfit due to circumstances that were present at the first fitness hearing. Rather, the trial court considered the previous evidence cumulatively to evaluate whether, based on that and further evidence, the respondent was an unfit parent. As such, the evidence was properly before the trial court. See J.R., 130 Ill.App.3d at 10, 85 Ill.Dec. 410, 473 N.E.2d 1009.
Furthermore, we decline to apply the doctrines of res judicata and collateral estoppel in the present case because we believe that it would be fundamentally unfair. See Nowak, 197 Ill.2d at 390-91, 258 Ill. Dec. 782, 757 N.E.2d 471. J'America has been in the care of the same foster family for more than five years. It was in the best interests of the child that the trial *303 court be able to consider the cumulative evidence in determining whether the respondent was fit to be a parent. It is well established that res judicata should not be strictly applied to bar evidence in child custody cases when the most important consideration is the welfare of the child. See Weaver, 228 Ill.App.3d at 616, 170 Ill.Dec. 207, 592 N.E.2d 643. Furthermore, collateral estoppel must not be applied unless it is clear that no unfairness results to the party being estopped. See Nowak, 197 Ill.2d at 391, 258 Ill.Dec. 782, 757 N.E.2d 471. Accordingly, for all these reasons, the doctrines of res judicata and collateral estoppel should not be applied in the present case.
The respondent's second argument on appeal is that there was insufficient evidence to prove her parental unfitness on the basis of depravity. The proper role of a reviewing court is to determine whether the trial court's finding of unfitness was against the manifest weight of the evidence. In re D.F., 201 Ill.2d 476, 498, 268 Ill.Dec. 7, 777 N.E.2d 930 (2002). A determination will be found to be against the manifest weight of the evidence only if the opposite conclusion is clearly evident or the determination is unreasonable, arbitrary, or not based on the evidence presented. D.F., 201 Ill.2d at 498, 268 Ill.Dec. 7, 777 N.E.2d 930. Under a manifest weight of the evidence standard, we give deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and the witnesses and has a degree of familiarity with the evidence that a reviewing court cannot possibly obtain. D.F., 201 Ill.2d at 498-99, 268 Ill.Dec. 7, 777 N.E.2d 930. A reviewing court, therefore, must not substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given the evidence, or the inferences to be drawn. D.F., 201 Ill.2d at 499, 268 Ill.Dec. 7, 777 N.E.2d 930.
Pursuant to the Adoption Act (750 ILCS 50/0.01 et seq. (West 2000)), a respondent's parental rights may be terminated if he or she is an unfit person. 750 ILCS 50/1(D) (West 2000). An "unfit person" means any person whom the trial court shall find to be unfit to have a child, without regard to the likelihood that the child will be placed for adoption. 750 ILCS 50/1(D) (West 2000). A parent may be found unfit if he or she is found "depraved." 750 ILCS 50/1(D)(i) (West 2000). The Illinois Supreme Court has defined depravity as "`an inherent deficiency of moral sense and rectitude.'" In re J.A., 316 Ill.App.3d 553, 561, 249 Ill.Dec. 484, 736 N.E.2d 678 (2000), quoting Stalder v. Stone, 412 Ill. 488, 498, 107 N.E.2d 696 (1952). The " "`[d]epravity of a parent may by shown by a series of acts or a course of conduct that indicates a moral deficiency and an inability to conform to accepted morality."'" In re Shanna W., 343 Ill.App.3d 1155, 1166, 279 Ill.Dec. 40, 799 N.E.2d 843 (2003), quoting In re S.H., 284 Ill.App.3d 392, 396, 219 Ill.Dec. 895, 672 N.E.2d 403 (1996), quoting In re Dawn H., 281 Ill.App.3d 746, 757, 217 Ill.Dec. 396, 667 N.E.2d 485 (1996). In order to establish unfitness, clear and convincing evidence of depravity must be shown to exist at the time of the petition or at the time of the decree of adoption. In re Adoption of Kleba, 37 Ill.App.3d 163, 166, 345 N.E.2d 714 (1976). Furthermore, the acts constituting depravity must be of sufficient duration and of sufficient repetition to establish a deficiency in moral sense and either an inability or an unwillingness to conform to accepted moral standards. Kleba, 37 Ill.App.3d at 166, 345 N.E.2d 714. In determining depravity, the trier of fact is required to closely scrutinize the *304 character and credibility of the parent. In re Perez, 173 Ill.App.3d 922, 937, 123 Ill. Dec. 693, 528 N.E.2d 238 (1988). Finally, because each case involving parental unfitness is sui generis, courts do not make factual comparisons to other cases. In re J.A., 316 Ill.App.3d 553, 561, 249 Ill.Dec. 484, 736 N.E.2d 678 (2000).
The determination of a trial court that a respondent is depraved is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. See D.F., 201 Ill.2d at 498, 268 Ill.Dec. 7, 777 N.E.2d 930. In the present case, the determination of the trial court is not against the manifest weight of the evidence because the opposite conclusion is not clearly evident. The evidence at trial revealed that the respondent was adjudicated delinquent for the offenses of involuntary manslaughter, aggravated battery, and aggravated criminal sexual assault. The adjudication of delinquency for involuntary manslaughter (720 ILCS 5/9-3(a) (West 1994)) was based on a determination beyond a reasonable doubt that the respondent had recklessly caused the death of her seven-month-old cousin. The adjudications of delinquency for aggravated battery (720 ILCS 5/12-4(a) (West 1994)) and aggravated criminal sexual assault (720 ILCS 5/12-14(b)(2)(i) (West 1994)) were based on the respondent's conduct of pushing a popsicle stick into the anus of her seven-month-old cousin.
Furthermore, the record also revealed that a three-month-old child in the respondent's care had suffered multiple injuries, including a head fracture and a significant femur fracture. At the time of the child's injuries, September 2002, the respondent was 18 years old. Although the DCFS investigation indicated the respondent's husband, the evidence showed that the respondent was aware of the child's injuries and yet failed to take the child for immediate medical attention. Additionally, the evidence showed that the respondent had a continuing propensity to steal, manifested in two felony retail theft offenses, one as recently as February 2003.
Finally, the respondent's probation officer testified that the respondent was not progressing with the counseling treatment at The Mill; consequently, the respondent was transferred to Indian Oaks for a higher level of sex offender treatment. The probation officer also testified that, while the respondent was on probation, the respondent was placed in detention based on reports of curfew violations, truancy, and stealing her mother's car. Based on these reports, and the fact that the respondent became pregnant twice while she was a minor, the respondent did not receive a successful discharge from her term of probation.
Depravity of a parent may by shown by a course of conduct that indicates a moral deficiency and an inability to conform to accepted moral standards. See In re Shanna W., 343 Ill.App.3d at 1166, 279 Ill.Dec. 40, 799 N.E.2d 843. At age 10, the respondent was adjudicated delinquent for the offenses of involuntary manslaughter, aggravated battery, and aggravated criminal sexual assault. The respondent was placed on probation for eight years. During her probation, the respondent was guilty of numerous probation violations, including curfew violations, truancy, and stealing her mother's car. Additionally, during her probation, the respondent was transferred to a second treatment facility because she was not progressing at the first treatment facility. At age 13, the respondent gave birth to J'America and became an unwed mother. At some point prior to turning 18 years old, the respondent gave birth to a second child. The respondent did not have custody of the second child. Rather, the child was under *305 the legal guardianship of his paternal grandparents. Furthermore, when she was 18 years old, the respondent failed to provide necessary medical care for a threemonth-old child left in her care. Finally, the respondent had committed felony retail theft on two occasions. The trial court was clearly in the best position to scrutinize the character and credibility of the respondent. See Perez, 173 Ill.App.3d at 937, 123 Ill.Dec. 693, 528 N.E.2d 238. As such, based on the foregoing facts, we cannot say that the order of the trial court finding the respondent depraved was against the manifest weight of the evidence or that the opposite conclusion was clearly evident.
In so ruling, we must address the dissent's contention that a finding of depravity based on the 1995 delinquency adjudications circumvents the purpose of the Juvenile Court Act of 1987 (705 ILCS 405/1-1 et seq. (West 2002)). In In re J.W., 204 Ill.2d 50, 69, 272 Ill.Dec. 561, 787 N.E.2d 747 (2003), our supreme court explained that, effective January 1, 1999, the purpose and policy section of the Juvenile Court Act was amended. The amendments represent a fundamental shift in the purpose and policy of the Juvenile Court Act from the singular goal of rehabilitation to the inclusion of the overriding concerns of protecting the public and holding juveniles accountable for violations of the law. In re J.W., 204 Ill.2d at 69, 272 Ill.Dec. 561, 787 N.E.2d 747. Although the respondent was adjudicated delinquent in 1995, the shift in the purpose of the Juvenile Court Act occurred while she was still on probation and is still relevant to how we view her juvenile offenses. As such, given that one purpose of the Juvenile Court Act is to hold juveniles accountable for their violations of the law, we do not believe that considering the respondent's delinquency adjudications in making a determination of her parental unfitness, based on depravity, is at odds with the purpose and policy of the Juvenile Court Act. Furthermore, despite the dissent's contention that the respondent is being penalized for acts committed when she was 10, we note that the purpose behind a decision to terminate one's parental rights is not a matter of punishment. Rather, we are concerned with one's ability to be a fit parent and with the best interests of the child.
The dissent also questions how an 18year-old can be found depraved based on acts she committed eight years ago. However, in addressing the respondent's first contention on appeal, we determined that the trial court was properly able to consider the delinquency adjudications in making its determination of parental unfitness. Furthermore, we believe that as much as the respondent's age can weigh in her favor in determining depravity, it can also weigh against her. The bases for the delinquency adjudications were quite serious, especially for a 10-year-old. Although the dissent seems to focus on the respondent's delinquency adjudication for aggravated criminal sexual assault, the respondent was also adjudicated delinquent for aggravated battery and involuntary manslaughter. Furthermore, J'America was born when the respondent was 13 years old, just three years after the delinquency adjudications. Additionally, while we have waited for the respondent to become an adult, J'America has been in the custody of the same foster family for five years. Based on the circumstances in this case, it is quite rational to find an 18-year-old depraved based on a course of conduct that began when she was 10 years old.
Additionally, in its contention that there is insufficient evidence to find the respondent depraved, the dissent places significant weight on the opinion testimony of White, the clinical social worker who counseled *306 the respondent for four years. White's counseling with the respondent pertained to her visits with J'America and the stress associated with the petition to terminate her parental rights. White's counseling did not pertain to her issues as a juvenile sex offender or a victim of sexual abuse. Consequently, the limited scope of his counseling must be considered when weighing his positive assessment of the respondent's maturity and parenting skills. Moreover, White acknowledged on crossexamination that the best indicator of the respondent's productivity as an adult was not what she had told him in counseling but, rather, how she was actually living her life.
Furthermore, the respondent's probation officer, Johnson, testified that the respondent had to be transferred to a second treatment facility because she was not progressing at the first facility. As her probation officer, Johnson had contact with the respondent over an eight-year period. Johnson further testified that during counseling, the respondent took responsibility for the death of her baby cousin. Johnson also testified to the respondent's multiple probation violations during her term of probation. In light of the conflicting testimony of White and Johnson, we must keep in mind that our function is not to substitute our judgment for that of the trial court on questions regarding the evaluation of the witnesses credibility and the inferences to be drawn from their testimony; the trial court is in the best position to observe the conduct and demeanor of the witnesses as they testify. In re M.S., 302 Ill.App.3d 998, 1002, 235 Ill.Dec. 969, 706 N.E.2d 524 (1999). As such, despite the contentions set forth in the dissent, we cannot say that the trial court's determination finding the respondent depraved was against the manifest weight of the evidence or that the opposite conclusion was clearly evident.
The respondent's final argument on appeal is that the trial court's order terminating her parental rights must be reversed because she was not admonished as required by section 1-5(3) of the Juvenile Court Act (705 ILCS 405/1-5(3) (West 2000)). Section 1-5(3) of the Juvenile Court Act provides, in pertinent part, the following:
"If the child is alleged to be abused, neglected or dependent, the court shall admonish the parents that if the court declares the child to be a ward of the court and awards custody or guardianship to the Department of Children and Family Services, the parents must cooperate with the Department of Children and Family Services, comply with the terms of the service plans, and correct the conditions that require the child to be in care, or risk termination of their parental rights." 705 ILCS 405/1-5(3) (West 2000).
The respondent's final argument is without merit. In the present case, the State's petition to terminate the respondent's parental rights was not based on a failure of the respondent to comply with a DCFS service plan related to J'America's adjudication of neglect under section 2-3 of the Juvenile Court Act (705 ILCS 405/2-3 (West 2000)). Rather, the respondent's parental rights were terminated based on a finding of depravity pursuant to section 1(D)(i) of the Adoption Act (750 ILCS 50/1(D)(i) (West 2000)). The trial court's failure to admonish the respondent regarding the need to cooperate with DCFS and comply with her service plans did not excuse an extended course of conduct manifesting an inherent deficiency of moral sense and rectitude. As such, the failure to admonish the respondent pursuant to section 1-5(3) of the Juvenile Court Act does not require a reversal.
*307 For the foregoing reasons, we affirm the judgment of the circuit court of Winnebago County.
Affirmed.
HUTCHINSON, J., concurs.
Justice BOWMAN, dissenting in part:
I respectfully dissent. Specifically, I believe that the trial court's finding of unfitness based on depravity was against the manifest weight of the evidence. In order to establish unfitness, clear and convincing evidence of depravity must be shown to exist at the time of the petition. In re J.A., 316 Ill.App.3d 553, 561, 249 Ill.Dec. 484, 736 N.E.2d 678 (2000). According to case law, depravity is defined as "`an inherent deficiency of moral sense and rectitude.' " In re J.A., 316 Ill.App.3d at 561, 249 Ill.Dec. 484, 736 N.E.2d 678, quoting Stalder v. Stone, 412 Ill. 488, 498, 107 N.E.2d 696 (1952). "`[A]cts constituting depravity * * * must be of sufficient duration and of sufficient repetition to establish a "deficiency" in moral sense and either an inability or an unwillingness to conform to accepted morality.'" In re J.A., 316 Ill. App.3d at 561, 249 Ill.Dec. 484, 736 N.E.2d 678, quoting In re Adoption of Kleba, 37 Ill.App.3d 163, 166, 345 N.E.2d 714 (1976). In my opinion, the State in this case failed to prove by clear and convincing evidence that respondent was depraved. Because the State failed to meet its burden, the trial court's finding of unfitness was against the manifest weight of the evidence. See In re J.J., 201 Ill.2d 236, 250-51, 267 Ill.Dec. 1, 776 N.E.2d 138 (2002).
Essentially, respondent, who is now 18 years old, is being punished for acts committed when she was 10. The majority places great emphasis on the fact that, at age 10, respondent was adjudicated delinquent for involuntary manslaughter, aggravated battery, and aggravated criminal sexual assault (1995 delinquency adjudications). However, a finding of depravity based on the 1995 delinquency adjudications circumvents the purpose of the Juvenile Court Act (705 ILCS 405/1-1 et seq. (West 2002)). Despite the 1999 amendments to the Juvenile Court Act, one of the primary purposes of the Juvenile Court Act remains the rehabilitation of the minor. In re J.W., 204 Ill.2d 50, 69, 272 Ill.Dec. 561, 787 N.E.2d 747 (2003). Moreover, the 1999 amendments were not in effect in 1995 when respondent was adjudicated delinquent. If rehabilitation remains one of the goals of the Juvenile Court Act, how can an 18-year-old mother be depraved based on acts she committed 8 years ago? In my opinion, the majority's decision effectively penalizes respondent for acts that could not be prosecuted under the Criminal Code of 1961 and blurs the distinction between the statutes.
Section 6-1 of the Criminal Code of 1961 states that "[n]o person shall be convicted of any offense unless he had attained his 13th birthday at the time the offense was committed." 720 ILCS 5/6-1 (West 2002). In addition, the Juvenile Court Act distinguishes between juveniles *308 over and under the age of 13, we must be careful not to place undue significance on behavior exhibited by a child at the tender age of 10.
I also note that the trial court refused to find respondent depraved according to the case law definition of depravity as set forth in count II of the original petition. When the State filed its original petition to terminate parental rights, count II alleged that respondent was depraved because "she stuck a popsicle stick in the anus of a child who was seven months old and that child ended up dying." Despite taking judicial notice of the 1995 delinquency adjudications, the court dismissed count II, stating that the State had not "adequately proved that a 10-year-old under [respondent's] circumstances would have the necessary state of mind or the ability to form the requisite intent to establish depravity." If the 1995 delinquency adjudications did not establish depravity according to case law when the State filed its original petition to terminate parental rights, they should not form the bases for depravity now.
In addition, I do not believe that the additional evidence proffered by the State was sufficient to establish that respondent was depraved. Count IV of the State's fourth amended petition to terminate parental rights, the only count on which respondent was found unfit, alleged that respondent was depraved due to her (1) continuing propensity to steal; (2) disregard for human life, which in one case resulted in the death of a child and in another resulted in a delay of needed medical care for a young child she had agreed to care for; and (3) repeated violations of her probation terms. However, a careful review of the record reveals that the acts listed above do not amount to clear and convincing evidence of depravity.
First, with respect to her alleged failure to seek medical attention for the threemonth-old child in her care, DCFS investigator McKinney testified that her report was unfounded as to respondent and that respondent's husband was responsible for the child's injuries. Further, respondent testified that she did what she could for the baby and that the baby's mother did not want to get medical help. Despite the mother's response, respondent took the baby to the hospital the following day.
Second, probation officer Johnson testified that, although respondent was guilty of probation violations, her behavior was generally good while she was in residential care. According to Johnson, her behavior was good both at The Mill and at Indian Oaks. In terms of probation violations, Johnson testified that in January 1998 respondent was placed in detention for not coming home at night, not attending school, stealing her mother's car, and having unsupervised contact with her brother. However, respondent's grandmother, Maggie Ann Taylor, testified that the car incident actually occurred in July 1994, before the delinquency adjudications. In addition, the charge regarding unsupervised contact with her brother was dismissed. Finally, Johnson recommended successful discharge from probation, based on respondent's overall behavior.
Third, with respect to respondent's "continuing propensity to steal," Johnson testified that respondent was arrested on December 20, 1996, for felony retail theft. However, no evidence of a conviction or detail as to what she stole was provided. Respondent was also arrested on February 1, 2003, for shoplifting $275 worth of merchandise from a store. At the time of the hearing, however, respondent had not yet been convicted of this offense. In my opinion, one unsubstantiated incident in 1996 coupled with another felony retail *309 theft charge does not establish a "propensity to steal."
Last, the only opinion testimony offered at trial was favorable to respondent and weighed against the court's finding. Clinical social worker White worked with respondent from 1998 to 2002. In White's opinion, respondent had sufficient counseling to prepare her to be a fit mother. Based upon his extensive hours of counseling, and his observations of respondent's interaction with J'America B., White made a positive assessment of her maturity and parenting skills. Contrary to the testimony of probation officer Johnson, White testified that respondent successfully completed the sex-abuse victim and sex offender services at The Mill before being sent to Indian Oaks for further residential treatment. According to White, respondent did not pose a risk to children and had developed "an understanding of the world that really were [sic] beyond her years in a positive way." In addition, respondent received overall satisfactory ratings on three service plans for actively participating in treatment and for making satisfactory progress towards her goals.
In sum, there was not clear and convincing evidence that respondent was depraved. Respondent's behavior from age 10 to 18 did not demonstrate an inability or an unwillingness to conform to accepted moral standards, and the trial court's finding of unfitness based on depravity was against the manifest weight of the evidence. Accordingly, I would reverse both the trial court's judgment of unfitness based on depravity and the judgment terminating respondent's parental rights to J'America B.