Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

# MEMORANDUM OPINION

No. 04-08-00324-CV

Jeff **SILL**,
Appellant

v.

Lorina Weaver **WHITE** f/k/a Lorina Sill,
Appellee

From the County Court at Law, Kendall County, Texas
Trial Court No. 07-173CCL
Honorable Bill R. Palmer, Judge Presiding

Opinion by:  Karen Angelini, Justice

Sitting:  Catherine Stone, Chief Justice
Karen Angelini, Justice
Phylis J. Speedlin, Justice

Delivered and Filed:  April 15, 2009

AFFIRMED

This appeal involves the enforcement of a foreign divorce decree. On appeal, Jeff Sill argues

that enforcement of the decree is barred by collateral estoppel. We disagree and affirm the judgment

of the trial court.

## BACKGROUND

On November 9, 2001, Jeff Sill and Lorina Weaver White were divorced by a Judgment for Dissolution of Marriage and Marital Settlement Agreement signed by an Illinois district court. Pursuant to the agreed marital settlement, Sill was required to pay White $500 per month in maintenance until he died, she remarried or co-habitated with another, or his obligations under the agreement were paid in full. The agreement also provided that title to White's car would be in White's name, but that Sill was required to make payments on the vehicle until paid in full.

Further, at the time of their divorce, Sill and Weaver owned (1) a home in Cibolo, Texas, which was bought in 2001 for $150,000 and had a mortgage balance of $119,000; (2) a home in Boerne, Texas, which was bought in 1999 for $94,000 and had a mortgage balance of $83,000; and (3) 3.4 acres of vacant land in Bergheim, Texas, which was bought in 1999 for $35,000 and had a mortgage balance of $25,000. Title to the Cibolo home was held in both Sill's and White's names. Title to the Boerne home, however, was held solely in White's name, and title to the Bergheim land was held solely in Sill's name. Pursuant to the agreed settlement, Sill was required to convey all his right, title, and interest in the Cibolo home to White, and he was "responsible for the mortgage until said mortgage is paid in full." Upon Sill's payment in full of all obligations under the agreed settlement, White agreed to convey her right, title, and interest to the Boerne home to Sill. Sill was "solely responsible for any and all mortgage payments, real estate taxes, assessments, utilities, insurance premiums and any and all other expenses incidental or related" to the Boerne home. These obligations were reiterated in the "debt and liabilities" section of the decree, where Sill and White acknowledged their marital debts and Sill agreed to be solely responsible for the mortgage on the Cibolo home; the mortgage on the Boerne home; the mortgage on the Bergheim land; the lien of

approximately $33,500 on White's car; the lien of $21,254 on his car; specified credit card debts; and business debts.

In exchange for Sill making mortgage and car payments until paid in full, he received "as his sole and separate property, free and clear of any right, title, and interest held or claimed by [White]" Capital Restorations, LLC, d/b/a Newport Construction Services, a construction service acquired by Sill and White during their marriage. And, in exchange for Sill receiving the business as his sole property, he agreed to the following "security" provision:

> The Husband represents and warrants that he is able to make the payments on all of the above debts because of the transfer of the business and all of the assets in the business to him. If, for any reason, he fails to pay any of the above debts, he agrees that his interest in the Boerne, Texas, home and the Bergheim, Texas, vacant land shall be awarded to the Wife as her sole and separate property and clear of any interest of the Husband.

Neither Sill nor White appealed this agreed Illinois judgment.

Almost seven months later, on May 29, 2002, White filed a motion in the Illinois district court, seeking enforcement of the security provision in the decree. According to White, Sill had failed to comply with the decree. Thus, she asked the trial court to enforce the security provision and award her Sill's interest in the Boerne home and Bergheim land.

On February 25, 2003, the Illinois trial court signed an order finding that Sill had violated the decree without legal cause or justification and holding Sill in contempt of court. However, the trial court refused to enforce the security provision and denied White's request for the deeds to the Boerne home and Bergheim land. According to the trial court, "enforcement would result in a forfeiture where the penalty is unrelated to the damages." Instead, the trial court ordered that Sill could "purge" himself of contempt by doing the following acts within twenty-one days or be remanded to the custody of the DuPage County Sheriff until his compliance was forthcoming:

(a) Pay unto [White] the sum of four thousand five hundred dollars ($4,500) for non-compliance with maintenance provisions of the Judgment from May 2002 through February 2003.

(b) Tender a duly executed and recordable deed transferring his interest in 209 Winter Frost, Cibolo, Texas, to [White].

(c) Pay unto [White] the sum of twelve thousand seven hundred nine dollars and ninety-five scents ($12,709.95) for non-compliance with the provisions in the Judgment requiring [Sill] to pay the mortgage incident to the 209 Winter Frost, Cibolo, Texas, real estate; said sum representing eleven (11) monthly payments missed at one thousand one hundred fifty-five dollars and forty-five cents ($1,155.45).

(d) Pay unto [White] the sum of seven thousand three hundred fifty dollars and forty-two cents ($7350.42) for non-compliance with the provisions of the Judgment requiring [Sill] to pay monthly obligations incident to [White]'s Tahoe automobile; said sum representing eleven (11) monthly payments missed at six hundred sixty eight dollars and twenty-two cents ($668.22).

(e) Remove [White]'s name from all of [Sill]'s business records including ABC Supply obligation and Bank One obligation.

Sill paid the amount listed above to White so that he could purge himself of contempt.

Meanwhile, after White had filed the motion to enforce but before the trial court's hearing, on July 2, 2002, Sill filed in Illinois district court a petition pursuant to section 1-1401 of the Illinois Code of Civil Procedure. Section 1-1401 allows a party to seek relief from final judgments if filed within two years after entry of the judgment. *See* 735 ILL. COMP. STAT. ANN. 5/2-1401 (West 2009) (abolishing bills of review and allowing party to seek post-judgment relief if filed within two years after entry of judgment). In Sill's petition for post-judgment relief, he argued that the marital settlement agreement so overwhelmingly favored White as to be unconscionable. The trial court denied the petition. On appeal, Sill argued that the trial court erred in failing to find the settlement agreement unconscionable. *Sill v. Sill*, No. 02-03-0301, slip op. at 1 (Ill. App. Ct. Feb. 20, 2004). The

Illinois appellate court disagreed and affirmed the trial court, explaining that because the law favors the peaceful settlement of marital disputes, if a party seeks to vacate a settlement incorporated into a dissolution judgment, all presumptions favor the validity of the settlement. *Id.* at 4. According to the appellate court, as the party challenging the settlement, Sill had to overcome this strong presumption that the agreement was valid and prove that it was unconscionable. *Id.* at 5. Sill, however, "introduced virtually no evidence about how the agreement was made and very little evidence about the parties' financial circumstances resulting from it." *Id.* Thus, the appellate court affirmed the trial court. *Id.* at 9.

On June 13, 2007, White filed in Kendall County, Texas, a "Motion to Enforce Foreign Decree," alleging that Sill had failed to comply with the Illinois divorce decree because he had not paid the mortgage on the Cibolo home until the mortgage debt was paid in full. White asked the county court to apply the decree's security provision and order Sill to sign over the deed on the Bergheim land to her. White alleged that both the Cibolo and Boerne homes had been lost to foreclosure because Sill had failed to make payments. Further, White alleged that Sill was in the process of selling the Bergheim land to a third party. Thus, White also filed a notice of lis pendens.

On March 7, 2008, the trial court held an evidentiary hearing on White's motion to enforce. At the hearing, Sill testified that he could not remember whether he had made any payments since the 2003 contempt hearing, but recognized that it had "been awhile since [White] had gotten any money" from him. Sill admitted that he had failed to pay in full the mortgage on the Cibolo home and that he had failed to pay in full the payments on White's car. White also testified. According to White, after the 2003 contempt hearing, she received $24,000, more or less, from Sill, but that after that date, she never received any more money. White testified that because the Cibolo home had

been close to foreclosure, her parents purchased the home. And, because Sill had failed to make car payments on her Tahoe, the Tahoe was repossessed. After hearing the evidence, the trial court granted White's motion and ordered Sill to sign a special warranty deed conveying all his right, title, and interest in the Bergheim land to White.

Sill appeals.

### DISCUSSION

In his sole issue, Sill argues that White's claim is barred by collateral estoppel. Both parties agree that Illinois law applies under the Full Faith and Credit Clause of the Constitution. Both parties also agree that under Illinois law, the application of collateral estoppel is governed by the following three elements: (1) the issue decided in a prior adjudication is identical to the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. *Gumma v. White*, 833 N.E.2d 834, 843 (Ill. 2005).

Sill argues that "[i]t is beyond dispute that [White] sought to enforce the 'security' provision in Illinois in 2003 and sought the identical relief" in the case. According to Sill, because the "Bergheim property was denied by the Illinois trial court in February of 2003," White is now precluded from seeking transfer of the Bergheim property. We disagree.

First, the issue decided in the prior motion to enforce was different from the one presented in the underlying motion to enforce. White testified that Sill had not paid any amounts since the 2003 contempt order, that he had allowed the Cibolo home to be in danger of foreclosure, that he had allowed the Boerne home to be foreclosed, that he had allowed White's Tahoe to be repossessed, and that he was attempting to sell the Bergheim land. Thus, after Sill committed new violations of the

decree by failing to make payments, allowing the two homes to be lost to foreclosure, and attempting to sell the Bergheim land, White was free to ask another court to apply the security provision as the issue decided in White's prior motion to enforce was different from the one presented here.

Second, the Illinois trial court's contempt order was not a final adjudication of whether the security provision is enforceable. After the divorce decree was entered, neither Sill nor White appealed. White then filed a post-judgment motion to enforce, asking that the trial court transfer the Bergheim property to her under the security provision. The trial court denied that request, because the trial court felt that White had not proven that the value of the property was related to the amount not paid by Sill: "[E]nforcement would result in a forfeiture where the penalty is unrelated to the damages." That is, the trial court declined to apply the security provision at that time. Instead, it found Sill in contempt and ordered him to pay the amount owed to White. The trial court's ruling, however, was not a final adjudication on the applicability of the security provision. *See In re J'America B.*, 806 N.E.2d 292, 301 (Ill. App. Ct. 2004) (holding that doctrines of res judicata and collateral estoppel did not apply because the trial court's decision at the fitness hearing was not a final judgment on the merits).

While White's motion to enforce and the trial court's ruling thereon did not relate to a final adjudication of the enforceability of the security provision, Sill's post-judgment motion for relief from the decree, allowed under Illinois law and filed in July 2002, did relate to the finality of the security provision. In that motion for post-judgment relief, Sill argued that the security provision was unconscionable. The trial court disagreed and refused to grant Sill relief from the divorce decree, holding that Sill had not proven that the security provision was unconscionable. The Illinois appellate court affirmed, holding that Sill had not met his burden to prove unconscionability.

Because White's motion to enforce was not barred by collateral estoppel, we affirm the judgment of the trial court.


Karen Angelini, Justice