JOHN D. TERRY, Plaintiff-Appellant, v. WATTS COPY SYSTEMS, INC., Defendant-Appellee.

Fourth District   No. 4—01—0689

Argued January 24, 2002.—Opinion filed April 16, 2002.

COOK, J., specially concurring.

Mark S. Atterberry and Grady Holley (argued), both of Holley & Rosen, of Springfield, for appellant.

Donald R. Tracy (argued) and Catherine A. DeGenova-Carter, both of Brown, Hay & Stephens, of Springfield, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In February 1998, plaintiff, John D. Terry, was terminated from his employment at defendant, Watts Copy Systems, Inc. (Watts). Terry

later filed a complaint with the Illinois Human Rights Commission (Commission), alleging that he was fired because of a handicap, in violation of section 2—102 of the Human Rights Act (Act) (775 ILCS 5/2—102 (West 2000)). In June 2000, a hearing was held before an administrative law judge (ALJ) of the Commission. In December 2000, the ALJ entered a recommended order and decision in Watts' favor, which the Commission later adopted. Terry appealed that decision (No. 4—01—0321), which is a separate appeal.

In February 2001, Terry filed the underlying complaint of retaliatory discharge, alleging that Watts fired him in retaliation for exercising his rights under the Workers' Compensation Act (820 ILCS 305/1 through 30 (West 2000)). Watts filed a motion to dismiss Terry's complaint, pursuant to section 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(4) (West 2000)). Following an April 2001 hearing, the trial court granted Watts' motion to dismiss Terry's complaint, upon concluding that it was barred by *res judicata.*

In May 2001, Terry filed a postjudgment motion and a motion for partial summary judgment on the issue of liability. In July 2001, the trial court denied both motions.

Terry appeals, arguing that (1) his retaliatory discharge claim is not barred by the doctrine of *res judicata* or collateral estoppel; and (2) the trial court erred by denying his summary judgment motion. We reverse the court's dismissal of Terry's complaint and decline to address its denial of Terry's summary judgment motion.

## I. BACKGROUND

Following a June 2000 evidentiary hearing, the ALJ made the following findings of fact. Terry began working for Watts as a field service technician in 1992. In March 1996, Terry's supervisors talked to him about his excessive absenteeism, noting that within a three-month period he had been absent 13 days. In December 1996, Lisa Haley, Watts' personnel manager, documented 14 absences between June 11, 1996, and December 17, 1996. In May 1997, Terry's supervisor suspended Terry for one day due to his having been absent on 13 days between January 1997 and May 1997. Terry attributed his absences to his son's illness.

On November 4, 1997, Terry injured his back while repairing a photocopier machine. Terry did not return to work until November 10, 1997, pursuant to a note from his physician (identified in the record only as Dr. Jones). On that date, Terry returned to work but was restricted to light duty requiring no lifting or bending. Jones' note indicated that Terry could return to normal duties on November 17, 1997. While on light duty, Terry was given a chair and photocopiers were brought to him to be repaired and cleaned.

On November 17, 1997, Terry resumed normal duties repairing copiers, but at some point that day, he suffered back pain and told his supervisor he could not complete his work. The next day, Terry saw Jones, who again placed him on light duty and restricted him from bending or lifting. Terry returned to his light-duty assignment in Watts' reconditioning division.

On November 24, 1997, Terry told Haley that he could not handle light duty and would not return to work. Terry went back to Jones, who, after considering results of a magnetic resonance imaging (MRI) test, wrote a note indicating that Terry would not be able to work until further notice and would be undergoing physical therapy. Jones referred Terry to a doctor identified in the record only as Dr. Riesenberger.

Riesenberger diagnosed Terry with a degenerative disc disease, which caused the outer fibers of his lumbar discs to degrade and break. While tears could heal properly and allow Terry to return to work, the disease rendered Terry susceptible to recurrent flare-ups of pain. Terry received physical therapy throughout December 1997 and January 1998. On December 16, 1997, he saw Jones, who issued another note indicating that Terry would not be able to return to work until further notice.

During his treatments with Riesenberger, Terry informed Riesenberger that he was a musician in a band and sometimes helped set up the stage for performances. Riesenberger encouraged Terry to continue playing in the band as long as he used proper lifting mechanics.

Meanwhile, Haley had learned from other Watts employees that Terry had been playing in a band. Terry had filed a workers' compensation claim shortly after his November 1997 injury and received temporary total disability benefits for the periods he was not working due to his injury. Haley contacted Fremont Insurance Agency (Fremont), Watts' workers' compensation carrier. Fremont hired a detective who, on January 31, 1998, videotaped Terry playing in a band and carrying and loading sound equipment. On February 3, 1998, Fremont informed Haley what the detective had observed and informed her that Terry's benefits would be discontinued.

Terry played in the band on five occasions between November 21, 1997, and January 31, 1998. He played a guitar that weighed 10 to 15 pounds and used an amplifier that weighed about 40 pounds. Typically, he played in the band twice a month and performed in the standing position with the guitar strapped to his body for a total of three to four hours per performance (40-minute sets separated by 20-minute breaks). After November 4, 1997, the band hired someone to move its equipment, and Terry was only responsible for carrying his guitar and amplifier to and from the band's performances.

On February 4, 1998, Terry completed his physical therapy program. Riesenberger found Terry's range of motion and strength to be normal, but Terry still complained of pain and limitation of activities. On February 10, 1998, Terry informed Haley that he would be receiving a return-to-work slip.

On February 13, 1998, Riesenberger discharged Terry from therapy with instructions that he refrain from lifting (1) objects weighing over 50 pounds on an occasional basis over a full range of motion, (2) objects weighing over 40 pounds on a frequent basis, or (3) objects weighing over 70 pounds from the floor to his knuckle. Riesenberger stated that Terry could return to work on February 16, 1998. On February 13, 1998, Terry informed Haley that he had a doctor's note releasing him for work with some restrictions. Haley informed Terry that he would be receiving a letter from Watts' counsel.

Shortly thereafter, Terry received a letter from Watts' counsel informing him that he no longer had a position with Watts. The letter stated the following reasons for Watts' decision to terminate him: (1) "your past work record which reflects work[-]related suspensions and excessive absences"; (2) "your present employment with other than [Watts] while receiving benefits from [Watts]"; and (3) "your failure to complete required releases."

The ALJ found that Terry had failed to establish a *prima facie* case of handicap discrimination in that he had failed to show that an adverse action was taken against him that was related to his handicap. The ALJ further determined that Terry failed to prove by a preponderance of the evidence that Watts violated section 2—102 of the Act (775 ILCS 5/2—102 (West 2000)) when it terminated Terry. In concluding his analysis of the issues, the ALJ also wrote as follows:

> "I find that the inclusion of untrue reasons for [Terry]'s termination in the February 14, 1998, letter constituted at most a clumsy attempt to cover the existence of the surveillance tape. In any event, [Terry] loses because the overwhelming weight of the evidence indicates that Watts terminated [Terry] because of [its] genuine belief that [Terry] had lied to management about the condition of his back."

In March 2001, the Commission adopted the ALJ's recommended order and decision. Terry's appeal of that order is, as stated, No. 4—01—0321.

In February 2001, Terry filed his retaliatory discharge complaint, alleging that Watts terminated him in retaliation for exercising his rights under the Workers' Compensation Act (820 ILCS 305/1 through 30 (West 2000)). In April 2001, the trial court granted Watts' section 2—619(a)(4) motion to dismiss Terry's complaint (735 ILCS 5/2—

619(a)(4) (West 2000)), concluding that the doctrine of *res judicata* barred it. Specifically, the court ruled that Terry "had the opportunity to litigate the reasons for his termination. The ultimate decision was that there was no causal relationship between [Terry]'s injury and his termination. The issue of why [Terry] was discharged has been litigated and any causal connections already denied."

In May 2001, Terry filed a postjudgment motion and motion for summary judgment on the question of Watts' liability, both of which the trial court later denied. This appeal followed.

## II. ANALYSIS

### A. *Res Judicata*

■ Terry first argues that the trial court erred by finding that his retaliatory discharge claim is barred by the doctrine of *res judicata*. Specifically, he contends that *res judicata* does not apply because the Commission did not have jurisdiction to adjudicate his retaliatory discharge claim. We agree.

"A section 2—619 motion to dismiss admits the legal sufficiency of the complaint, but asserts an affirmative defense or other matter that avoids or defeats the claim. [Citation.] The motion should be granted if, after construing the documents in support and in opposition to the motion in the light most favorable to the nonmoving party, there are no disputed issues of material fact." *Whetstone v. Sooter*, 325 Ill. App. 3d 225, 229, 757 N.E.2d 965, 969 (2001).

We review *de novo* the granting of a section 2—619 motion to dismiss. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389, 757 N.E.2d 471, 477 (2001).

■ A prior judgment may have preclusive effect in a subsequent action under both *res judicata* and collateral estoppel. *Nowak*, 197 Ill. 2d at 389, 757 N.E.2d at 477. "The doctrine of *res judicata* provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand[,] or cause of action." *Nowak*, 197 Ill. 2d at 389, 757 N.E.2d at 477. For the doctrine of *res judicata* to apply, the following three requirements must be satisfied: (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) an identity of causes of action, and (3) an identity of parties or their privies. *Nowak*, 197 Ill. 2d at 390, 757 N.E.2d at 477. Different claims are considered part of the same cause of action if they arise from a single group of operative facts. *Altair Corp. v. Grand Premier Trust & Investment, Inc.*, 318 Ill. App. 3d 57, 61, 742 N.E.2d 351, 355 (2000).

Exceptions to the application of *res judicata* exist (*Cabrera v. First National Bank of Wheaton*, 324 Ill. App. 3d 85, 92, 753 N.E.2d 1138, 1145 (2001)), and the doctrine will not be applied where it would be fundamentally unfair to do so (*Nowak*, 197 Ill. 2d at 390, 757 N.E.2d at 477). Although *res judicata* applies to issues actually decided in the original action as well as to matters that could have been decided, it does not apply where a limit in the subject-matter jurisdiction of the court rendering the earlier judgment prevented the plaintiff from seeking relief. *Cabrera*, 324 Ill. App. 3d at 92, 753 N.E.2d at 1145.

Citing *LaPorte v. Jostens, Inc.*, 213 Ill. App. 3d 1089, 1092, 572 N.E.2d 1209, 1211 (1991) (holding that jurisdiction for a retaliatory discharge claim vests with the circuit court and not the Commission), Terry contends that *res judicata* does not bar his retaliatory discharge claim because the Commission does not have jurisdiction to hear such a claim. We agree.

■ The Commission's adjudicatory authority is limited to the adjudication of complaints filed under the Act. See 775 ILCS 5/8—102(G) (West 2000). Under the Act, it is a violation of an employee's civil rights for an employer "to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges[,] or conditions of employment on the basis of unlawful discrimination." 775 ILCS 5/2—102(A) (West 2000). The Act defines "unlawful discrimination" as follows:

> " 'Unlawful discrimination' means discrimination against a person because of his or her race, color, religion, national origin, ancestry, age, sex, marital status, handicap, military status, or unfavorable discharge from military service as those terms are defined in this [s]ection." 775 ILCS 5/1—103(Q) (West 2000).

Section 6—101 of the Act provides that it is also a civil rights violation to:

> "[r]etaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment or sexual harassment in higher education, discrimination based on citizenship status in employment, or because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this [a]ct." 775 ILCS 5/6—101(A) (West 2000).

Thus, retaliation for filing a workers' compensation claim does not constitute a civil rights violation under the Act, and the Commission does not have jurisdiction over such a claim. Accordingly, we conclude that *res judicata* does not bar Terry's retaliatory discharge claim.

## B. Collateral Estoppel

Terry also argues that his retaliatory discharge claim is not barred by collateral estoppel. We agree.

■ The doctrine of collateral estoppel applies when a party participates in two consecutive cases arising on different causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction. *Nowak*, 197 Ill. 2d at 389-90, 757 N.E.2d at 477.

Collateral estoppel bars a claim when (1) the issue decided in the first proceeding is identical with the one presented in the current action; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party to, or in privity with a party to, the prior adjudication. *Nowak*, 197 Ill. 2d at 390, 757 N.E.2d at 478. A tribunal's finding collaterally estops a litigant in a subsequent proceeding only if the finding in the initial proceeding was necessary or essential to the tribunal's decision. *Ericksen v. Rush-Presbyterian-St. Luke's Medical Center*, 289 Ill. App. 3d 159, 167, 682 N.E.2d 79, 85 (1997).

■ In *Nowak*, 197 Ill. 2d at 390-91, 757 N.E.2d at 478, the Supreme Court of Illinois discussed the principles underlying the doctrine of collateral estoppel, in pertinent part, as follows:

> "Application of the doctrine of collateral estoppel must be narrowly tailored to fit the precise facts and issues that were clearly determined in the prior judgment. [Citation.]
>
> Collateral estoppel is an equitable doctrine. [Citation.] Even where the threshold elements of the doctrine are satisfied, collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped. [Citations.] In deciding whether the doctrine of collateral estoppel is applicable in a particular situation, a court must balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his case. In determining whether a party has had a full and fair opportunity to litigate an issue in a prior action, those elements which comprise the practical realities of litigation must be examined."

In this case, neither the first nor second requirement for application of collateral estoppel has been satisfied. Watts contends that Terry's claim is precluded because the Commission already determined the issue of "why Terry was terminated." However, as Terry points out, the precise issue considered and resolved in the hearing before the Commission was whether Watts fired Terry for discriminatory

reasons. Thus, the focus of that proceeding was appropriately limited to determining what was in the minds of Haley and Watts' other managers who decided to terminate Terry. See *Johnson v. Human Rights Comm'n*, 318 Ill. App. 3d 582, 587-88, 742 N.E.2d 793, 797 (2000) (in employment discrimination litigation, when an employer articulates a legitimate, nondiscriminatory reason for its actions, the sole question is whether the plaintiff can show that the given reason is a pretext for unlawful discrimination). Moreover, the Commission's finding—that Terry was terminated because Watts' managers believed he lied about his physical condition—does not defeat Terry's retaliatory discharge claim. See *Clark v. Owens-Brockway Glass Container, Inc.*, 297 Ill. App. 3d 694, 697-98, 697 N.E.2d 743, 745-46 (1998) (in which the appellate court (1) rejected the proposition that an employer's reasonably held belief that an employee lied about her injuries defeats the employee's retaliatory discharge claim and (2) explained that an act of "retaliation" occurs when the employer's action is causally related to the employee's exercise of rights under the Workers' Compensation Act).

Although the Commission determined that Terry was terminated because Watts' managers believed that Terry had lied to management about his injury, the Commission neither considered nor determined whether Terry *actually* lied about his injury. Even assuming, *arguendo*, that the Commission made such a finding, it would not estop Terry's retaliatory discharge complaint because it would not have been essential or necessary to the question before the Commission. See *Ericksen*, 289 Ill. App. 3d at 167, 682 N.E.2d at 85. While a finding on Terry's veracity was irrelevant to the question before the Commission, it is essential for a determination on a retaliatory discharge claim.

■ To succeed on a claim of retaliatory discharge, the plaintiff must show that (1) he has been discharged; (2) in retaliation for his activities; and (3) the discharge violates a clear mandate of public policy. *Stebbings v. University of Chicago*, 312 Ill. App. 3d 360, 365, 726 N.E.2d 1136, 1140 (2000). In *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 181-82, 384 N.E.2d 353, 357 (1978), our supreme court recognized the public policy favoring the exercise of workers' compensation rights. A determination of whether Terry actually lied to Watts and Fremont regarding his injury is essential to the third prong of his retaliatory discharge claim. Terry's termination would not be in violation of the public policy favoring the exercise of workers' compensation rights if he was filing fraudulent claims.

Because the precise issues relevant to Terry's retaliatory discharge claim were not considered or decided by the Commission, Terry's claim is not barred by collateral estoppel.

■ Moreover, collateral estoppel cannot apply in this case because there has not been a final judgment in the first proceeding. For purposes of collateral estoppel, a judgment is not final until the potential for appellate review has been exhausted. *Ballweg v. City of Springfield*, 114 Ill. 2d 107, 113, 499 N.E.2d 1373, 1375 (1986). Terry filed an appeal of the Commission's decision, and that appeal was still pending. Thus, collateral estoppel does not bar Terry's retaliatory discharge claim.

Because Terry's retaliatory discharge claim is not barred by the doctrine of *res judicata* or collateral estoppel, we hold that the trial court erred by dismissing Terry's complaint. Accordingly, we reverse the trial court's order dismissing the complaint.

## C. Terry's Summary Judgment Motion

Last, Terry argues that the trial court erred by denying his motion for partial summary judgment on the issue of liability. We decline to address this issue.

■ Because the denial of a summary judgment motion is interlocutory, ordinarily, such a denial is not an appealable final judgment. *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 357, 718 N.E.2d 191, 200 (1999). However, when a circuit court grants one party's summary judgment motion as to all issues and denies the other party's summary judgment motion as to the same issues, the resulting order is final and appealable. *Arangold*, 187 Ill. 2d at 358, 718 N.E.2d at 201.

■ Here, however, Watts did not file a corresponding motion for summary judgment, and no basis exists upon which this court could consider Terry's appeal of the trial court's denial of his summary judgment motion. Accordingly, we decline to address the trial court's denial of Terry's summary judgment motion.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's order dismissing Terry's retaliatory discharge complaint and remand for further proceedings.

Reversed and remanded.

KNECHT, J., concurs.

JUSTICE COOK, specially concurring:

I concur fully in the majority opinion. I respectfully suggest, however, that the supreme court reconsider its statement that "[f]or purposes of applying the doctrine of collateral estoppel, finality requires that the potential for appellate review must have been

exhausted." *Ballweg*, 114 Ill. 2d at 113, 499 N.E.2d at 1375. The case which *Ballweg* cites for that proposition appears to deal with law of the case, not with *res judicata*. The rule in most jurisdictions appears to be to the contrary. See Restatement (Second) of Judgments § 13, Comment *f*, at 135, and Comment *f*, Reporter's Note, at 140 (1982). We should not tolerate inconsistent judgments even if the appeal in the first case has not yet been decided. Remedies are available if the first judgment is subsequently reversed. See Restatement (Second) of Judgments § 16 (1982).