NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220193-U

NO. 4-22-0193

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 21, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| RONALD RAYMOND SHEA, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| DOUGLAS KOEHLER, CAROLYN KOEHLER, AMY | ) | No. 20L387 |
| SILVESTRI, SHEA KOEHLER MILLS, STEPHANIE | ) | |
| KOEHLER POWELL, KIMBERLY McKENZIE, | ) | |
| MARK BYRD, DOUGLAS WARREN, AGNEW LAW | ) | Honorable |
| FIRM, PC, | ) | Lisa R. Fabiano, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Harris and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed the trial court's dismissal with prejudice of
plaintiff's civil conspiracy claim, concluding the statute of limitations had expired
and *res judicata* and collateral estoppel barred the claim.

¶ 2    In November 2020, plaintiff, Ronald Raymond Shea, *pro se* filed a complaint for,

in relevant part, civil conspiracy against defendants, Douglas Koehler, Carolyn Koehler, Amy

Silvestri, Shea Koehler Mills, Stephanie Koehler Powell, Kimberly McKenzie, Mark Byrd,

Douglas Warren, and Agnew Law Firm, PC, alleging they had conspired to (1) isolate Ronald's

mother, (2) pilfer her estate, and (3) alter her estate plans.

¶ 3    Defendants filed motions to dismiss the civil conspiracy claim, arguing, in

relevant part, (1) the statute of limitations had expired and (2) the claim was barred by the

doctrines of *res judicata* and collateral estoppel. In February 2022, the trial court granted defendants' motions and dismissed Ronald's civil conspiracy claim with prejudice.

¶ 4　　　　Ronald appeals, arguing the trial court erred by dismissing his civil conspiracy claim as to all defendants. We disagree and affirm.

¶ 5　　　　　　　　　　　I. BACKGROUND

¶ 6　　　　This case is the most recent iteration of a series of lawsuits beginning in 2011 filed by Ronald against his sister, Carolyn Koehler, and a growing collection of defendants. The series of lawsuits all stem from events related to the estate plans of Ronald and Carolyn's mother, Phyllis Shea. We discuss only those facts relevant to this appeal.

¶ 7　　　　In November 1988, Phyllis and her husband, Gerald Shea, established a revokable living trust that appointed their three children, Ronald, Carolyn, and J. Michael (Mike) Shea, as successor co-trustees. The trust split the estate equally between the three children upon the deaths of Phyllis and Gerald. After Gerald's death in 2008, Phyllis made a series of amendments to the trust before her death on October 14, 2015. The final version of the trust disbursed the lesser of 1% or $5000 to Mike and the lesser of 0.5% or $2500 to Ronald, with the remainder of the trust disbursed as follows: (1) 48% to Carolyn; (2) 25% to Carolyn's daughter, Shea Koehler Mills; (3) 25% to Carolyn's daughter, Stephanie Koehler Powell; and (4) 2% to Our Lady of the Assumption Catholic Church (the church) in Beloit, Wisconsin.

¶ 8　　　　　　　　　　　A. The Federal Lawsuit

¶ 9　　　　In 2012, Ronald filed a complaint in the United States District Court for the Northern District of Illinois, which, after amendments, contained 23 counts against 18 named defendants and 5 John Does. The district court granted defendants' motions to dismiss all claims

except a claim of battery against Carolyn. A jury later returned a verdict on that count in Carolyn's favor.

¶ 10 Ronald appealed, and the Seventh Circuit Court of Appeals issued a decision affirming the district court in most aspects but reversing the dismissal of state tort claims. *Shea v. Winnebago County Sheriff's Department*, 745 Fed. Appx. 541, 547 (2018). The Seventh Circuit determined Ronald's claims for (1) civil conspiracy, assault, and false imprisonment against Carolyn and Carolyn's husband, Douglas Koehler; (2) battery against Douglas; and (3) malicious prosecution against Carolyn were sufficient to survive dismissal in federal practice. *Id.* (We note Ronald filed a writ of *certiorari* to the United States Supreme Court, which was denied.)

¶ 11 On November 14, 2019, the district court dismissed the claims reinstated by the Seventh Circuit for lack of subject matter jurisdiction because diversity of citizenship did not exist. Ronald appealed, and the Seventh Circuit affirmed the dismissal in December 2020. *Shea v. Koehler*, 830 Fed. Appx. 781, 782 (2020).

¶ 12 B. The Winnebago County Lawsuits

¶ 13 While the federal case was ongoing, Ronald filed a series of lawsuits in Winnebago County.

¶ 14 1. *The Guardianship Case*

¶ 15 In March 2015, Ronald filed a petition for adult guardianship of Phyllis. Attorney Kimberly McKenzie was appointed guardian *ad litem* during the pendency of the case. During the proceedings, Ronald filed a motion to depose Phyllis. The motion was denied, and the case ended with Phyllis's death on October 14, 2015.

¶ 16 2. *The Rescission of Trust Case*

¶ 17    In November 2015, Ronald filed a complaint to rescind the sixth and seventh amendments to Phyllis's trust. Later, Ronald filed an amended complaint, naming Carolyn, Mike, Shea, Stephanie, and the church as the defendants. Ronald alleged undue influence, Phyllis's lack of capacity, constructive fraud, and tortious interference with an inheritance. The matter proceeded to a bench trial with Carolyn as the only defendant because the trial court concluded any decision would dispose of the other beneficiaries' interests.

¶ 18    At trial, the trial court heard testimony from Ronald, Carolyn, McKenzie, and Douglas Warren, who acted as Phyllis's attorney when she amended the estate plans. (The content of the testimony was thoroughly laid out on direct appeal in that case. See *Shea v. Koehler*, 2018 IL App (2d) 170818-U.)

¶ 19    At the conclusion of the bench trial, the trial court found insufficient evidence of undue influence, determined Phyllis was not isolated, and found the amendments to the trust were of Phyllis's own accord. Accordingly, the court ruled in Carolyn's favor on all counts. Ronald appealed, and the appellate court affirmed. *Id.*

¶ 20                          3. *The Probate Case*

¶ 21    Ronald also brought his claims surrounding the validity of Phyllis's will in the probate case that had been filed by Carolyn for the administration of Phyllis's property not subject to the trust. Ronald's petition contesting the validity of Phyllis's will was denied.

¶ 22                          C. The Present Case

¶ 23    In November 2020, Ronald filed the present case. In his third amended complaint, Ronald named the following people as defendants: (1) Carolyn, Douglas, and their daughters, Shea and Stephanie; (2) attorney Amy Silvestri, who had represented the Koehlers in the previous cases; (3) Warren and McKenzie; (4) the Agnew Law Firm, which was Warren's

employer; (5) Mark Byrd, who had briefly represented Phyllis in the federal case; and (6) 40 John Does. Ronald listed 12 causes of action; however, Ronald's claim of civil conspiracy is the only claim relevant to this appeal.

¶ 24 Ronald summarized the alleged conspiracy as follows:

"Carolyn Koehler conspired with, and enlisted the services of multiple parties:

i. to aid and abet her in the commission of tortious and criminal acts;

ii. to wrongfully isolate Phyllis Shea from the protection of her son;

iii. so that Carolyn could wrongfully pilfer and seize Phyllis Shea's million-dollar estate unimpeded by Ronald Shea."

Ronald specifically detailed events of the conspiracy, such as his removal from Phyllis's home, the "pilfering" of Phyllis's accounts in the four years leading up to her death, the changes to Phyllis's estate plans, and the blocking of Ronald's attempts to depose Phyllis.

¶ 25 Defendants filed various combined motions to dismiss several counts of Ronald's third amended complaint pursuant to sections 2-615, 2-619, and 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619, and 2-619.1 (West 2020)). Four of the challenged counts were dismissed with prejudice on Ronald's own motion.

¶ 26 In February 2022, the trial court conducted a hearing on the civil conspiracy claim. After hearing fully from all parties, the court determined the statute of limitations barred the civil conspiracy claim against all defendants except Carolyn and Douglas. The court also determined (1) McKenzie was entitled to quasi-judicial immunity based on her role as guardian *ad litem* and (2) *res judicata* or collateral estoppel applied to many of the defendants.

¶ 27      Regarding the remaining defendants, Carolyn and Douglas, the trial court concluded *res judicata* or collateral estoppel barred the claim. The court explained as follows:

> "[Ronald] summed up for me his, his civil conspiracy claim, and he's, he's alleging that [the Koehlers] conspired together, with others, to isolate *** his mother and to take monies from her estate, wrongfully take monies from her estate. Looking at the, the transcript from Judge Doherty [in the rescission of trust case], it is clear to me that Judge Doherty—he, he held a full hearing. The parties were—the same parties were involved, all parties had an opportunity, particularly, [Ronald] had an opportunity to fully present all of his evidence and Judge Doherty found that no—there had been no isolation of, of [Phyllis].
>
> She, clearly, had decided to cut off contact with her sons, but [Judge Doherty] believed—he found that she did—that she did so of her own decision. After hearing all the evidence, he found that she, on her own decision, decided to cut off contact with her sons. He also found that there was no evidence that there had been any expenditures from her estate. So, he, he's ruled—he's—the evidence has been presented by [Ronald] and Judge Doherty has made a finding that there was no isolation and no mismanagement or taking from her estate."

Accordingly, the trial court dismissed the civil conspiracy claim with prejudice against all defendants.

¶ 28      Later in February 2022, the trial court entered its written order dismissing the civil conspiracy claim with prejudice and included a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that the dismissal was appealable.

¶ 29      This appeal followed.

¶ 30                                    II. ANALYSIS

¶ 31        Ronald appeals, arguing the trial court erred by dismissing his conspiracy claim as to all defendants. We disagree and affirm.

¶ 32                                  A. The Applicable Law

¶ 33        As an initial matter, the various motions to dismiss were purportedly based on sections 2-615, 2-619, and 2-619.1 of the Code (735 ILCS 5/2-615, 2-619, and 2-619.1 (West 2020)). However, the relevant considerations to resolve this appeal are covered solely by sections 2-619(a)(4) and (a)(5) (*id.* § 2-619(a)(4), (a)(5)).

¶ 34        "The purpose of a section 2-619 motion to dismiss *** is to dispose of issues of law and easily proven issues of fact at the outset of litigation." *Dratewska-Zator v. Rutherford*, 2013 IL App (1st) 122699, ¶ 15, 996 N.E.2d 1151. A section 2-619 motion to dismiss "admits the legal sufficiency of the complaint, but raises defects, defenses, or other affirmative matters appearing on the face of the complaint or established by external submissions, which defeat the action." *Nourse v. City of Chicago*, 2017 IL App (1st) 160664, ¶ 14, 75 N.E.3d 397. "In deciding a section 2-619 motion, a court accepts all well-pleaded facts and their inferences as true and construes all pleadings and supporting documents in favor of the nonmoving party." *In re Estate of Shelton*, 2017 IL 121199, ¶ 21, 89 N.E.3d 391.

¶ 35        Section 2-619(a)(5) of the Code allows for the involuntary dismissal of an action that "was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2020). Section 2-619(a)(4) of the Code allows for the involuntary dismissal of an action that "is barred by a prior judgment." *Id.* § 2-619(a)(4). Whether a cause of action has been properly dismissed under section 2-619 of the Code presents a question of law that we review *de novo. Ferguson v. City of Chicago*, 213 Ill. 2d 94, 99, 820 N.E.2d 455, 459 (2004).

¶ 36                        B. The Statute of Limitations

¶ 37        The majority of defendants here, namely all defendants except Carolyn and

Douglas, argue Ronald's civil conspiracy claim was barred by the statute of limitations. We

agree.

¶ 38                            1. *The Applicable Law*

¶ 39        Claims for civil conspiracy are subject to the five-year statute of limitations set

forth in section 13-205 of the Code, which provides that "all civil actions not otherwise provided

for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS

5/13-205 (West 2020). The statute of limitations in a civil conspiracy claim "runs from the

commission of the last overt act alleged to have caused damage." *Austin v. House of Vision, Inc.*,

101 Ill. App. 2d 251, 255, 243 N.E.2d 297, 299 (1968). Civil conspiracy claims therefore

typically fall under the continuing violation doctrine.

¶ 40        Under the continuing violation doctrine, "where a tort involves continuing or

repeated injurious behavior, 'the statute of limitations does not begin to run until the date of the

last injury or when the tortious acts cease.' " *Pavlik v. Kornhaber*, 326 Ill. App. 3d 731, 745, 761

N.E.2d 175, 186-87 (2001) (quoting *Hyon Waste Management Services, Inc. v. City of Chicago*,

214 Ill. App. 3d 757, 763, 574 N.E.2d 129, 132 (1991)). "A continuing violation *** is

occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial

violation." *Hyon*, 214 Ill. App. 3d at 763.

¶ 41                               2. *This Case*

¶ 42        In this case, Ronald alleged in his complaint the tortious and criminal acts were

intended to isolate Phyllis from Ronald so Carolyn could "wrongfully pilfer and seize Phyllis

Shea's million-dollar estate unimpeded by Ronald Shea." All of the overt acts alleged by Ronald

involve defendants' (1) isolating Phyllis, (2) preventing Ronald from deposing Phyllis, (3) removing money from Phyllis's accounts prior to her death, and (4) making changes to Phyllis's estate plans. Even giving Ronald's claims the most generous reading, no overt act towards the conspiracy as Ronald alleged could have taken place after Phyllis's death on October 14, 2015.

¶ 43 Assuming in Ronald's favor the last overt act took place on the day of Phyllis's death, the five-year statute of limitations ran its course on October 14, 2020. Ronald filed the present action on November 13, 2020, nearly a month after the statute of limitations had unquestionably expired.

¶ 44 Ronald argues the federal case he filed tolled the statute of limitations in the interim. However, Ronald cites no case or rule which suggests the existence of a related federal case generally tolls the statute of limitations in a state action. The only relevant rule Ronald cites is the Savings Statute. 735 ILCS 5/13-217 (West 2020).

¶ 45 The Savings Statute states the following:

"[If] the action is dismissed by a United States District Court for lack of jurisdiction, *** then, whether or not the time limitation for bringing such an action expires during the pendency of such action, the plaintiff *** may commence a new action within one year or within the remaining period of limitation, whichever is greater, after such *** action is dismissed by a United States District Court for lack of jurisdiction." *Id.*

¶ 46 In this case, Ronald's federal civil conspiracy claim was dismissed for lack of jurisdiction in the district court on November 14, 2019. Ronald filed his present case within one year of that dismissal on November 13, 2020.

¶ 47　　　　　However, the Seventh Circuit had reinstated only the claims related to Carolyn and Douglas. Therefore, the counts dismissed for lack of jurisdiction related to only Carolyn and Douglas. A complaint naming a different defendant is a separate action for purposes of the Savings Statute. *Flynn v. Allis Chalmers Corp.*, 262 Ill. App. 3d 136, 140, 634 N.E.2d 8, 10 (1994). Accordingly, because the Savings Statute does not entitle a plaintiff to refile an action naming a new defendant, Ronald cannot use the Savings Statute to toll the statute of limitations for claims against the other defendants.

¶ 48　　　　　We note defendants make additional arguments pertaining to a two-year statute of limitations for claims against practicing attorneys. However, because the more liberal limitations period of five years had already expired by the time Ronald brought this case, we need not address an even shorter limitations period. The trial court properly dismissed the civil conspiracy claim as to defendants Silvestri, Mills, Powell, McKenzie, Byrd, Warren, and Agnew Law Firm on the basis that the statute of limitations had expired.

¶ 49　　　　　　　　　　C. *Res Judicata* and Collateral Estoppel

¶ 50　　　　　As we have explained, the tolling provision of the Savings Statute does permit Ronald to raise his civil conspiracy claim against the named defendants Carolyn and Douglas. However, Carolyn and Douglas argue the claim is nonetheless barred by the doctrines of *res judicata* and collateral estoppel. We agree.

¶ 51　　　　　As an initial matter, Ronald argues defendants' estoppel arguments are unclear because they do not clearly differentiate between what is barred by *res judicata* and what is barred by collateral estoppel.

¶ 52　　　　　"Collateral estoppel differs from *res judicata* *** in that the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined,

rather than matters that might have been litigated and determined." *LaSalle Bank National Ass'n v. Village of Bull Valley*, 355 Ill. App. 3d 629, 635, 826 N.E.2d 449, 456 (2005) (citing *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 390, 757 N.E.2d 471, 477 (2001)). Under both the doctrine of *res judicata* and the doctrine of collateral estoppel, the existence of a valid final judgment on the merits by a court of competent jurisdiction has a preclusive effect. *Nowak*, 197 Ill. 2d at 389. In this case, both doctrines apply, and Ronald's argument for more clarity is an exercise in semantic pedantry.

¶ 53                          1. *Res Judicata*

¶ 54         " '*Res judicata* is an equitable doctrine that bars the relitigation of issues that were raised and adjudicated in a prior proceeding.' " *People v. Poole*, 2022 IL App (4th) 210347, ¶ 81 (quoting *People v. Kines*, 2015 IL App (2d) 140518, ¶ 20, 37 N.E.3d 428). The doctrine bars not only what was actually decided in the prior proceeding but also what could have been decided. *Id.* "For the doctrine of *res judicata* to apply, the following three requirements must be satisfied: (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) an identity of causes of action, and (3) an identity of parties or their privies." *Terry v. Watts Copy Systems, Inc.*, 329 Ill. App. 3d 382, 387, 768 N.E.2d 789, 795 (2002). "Different claims are considered part of the same cause of action if they arise from a single group of operative facts." *Id.*

¶ 55         In this case, a final judgment on the merits was entered in the rescission of trust case after a seven-day bench trial. In that action, Ronald asserted that Carolyn (1) isolated him from Phyllis and (2) wrongfully influenced Phyllis to change her estate plans. The trial court's ruling in Carolyn's favor at the conclusion of the trial constituted a final judgment on the merits.

¶ 56         Both Ronald's original claims of wrongful isolation and influence and his current claim of conspiracy to do the same are based on a single group of operative facts. Both claims

- 11 -

focus on Phyllis's relationship with Ronald before her death and the changes made to her estate. Accordingly, we conclude that the claims from the rescission case are the same cause of action as the present conspiracy claim. See *id.*

¶ 57    The parties are also the same. Ronald continues to bring these claims against his sister, Carolyn. Ronald's complaint specifically states, "Carolyn Koehler conspired with, and enlisted the services of multiple parties" in enacting the claimed conspiracy. Douglas, therefore, is a privy of Carolyn, and there is an identity of parties for *res judicata* purposes.

¶ 58    Because all three requirements are met, the doctrine of *res judicata* bars Ronald's conspiracy claim against Carolyn and Douglas, and the trial court correctly dismissed the claim.

¶ 59                              2. *Collateral Estoppel*

¶ 60    Because the factual issues at the heart of Ronald's claims were thoroughly litigated in the rescission of trust case, the doctrine of collateral estoppel also bars Ronald from relitigating those issues as part of his conspiracy claim.

¶ 61    "The doctrine of collateral estoppel provides that an issue which has been raised and decided by a court of competent jurisdiction cannot be relitigated in a subsequent action between the same parties in the same or a different cause of action." *Suttles v. Vogel*, 126 Ill. 2d 186, 195-96, 533 N.E.2d 901, 906 (1988). "Collateral estoppel bars a claim when (1) the issue decided in the first proceeding is identical with the one presented in the current action; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party to, or in privity with a party to, the prior adjudication." *Terry*, 329 Ill. App. 3d at 389.

¶ 62    The first requirement—that the issues be identical—is clearly met here. In the rescission case, the issues included (1) Phyllis's alleged isolation, (2) the "pilfering" of her

- 12 -

estate, and (3) whether she made the changes to her estate plans willingly. In this case, Ronald alleges there was a conspiracy to (1) isolate Phyllis and (2) "pilfer" and seize her estate.

¶ 63    Second, there was a final judgment on the merits in the recission case. The trial court entered its determination after a seven-day bench trial, finding there was no (1) undue influence on Phyllis to change her estate plans, (2) isolation of Phyllis from her sons, and (3) pilfering of Phyllis's estate. Ronald had the opportunity to present evidence on these issues, and the court determined the evidence presented was insufficient. The court's decision precludes another court from making a contrary determination on those same issues.

¶ 64    Ronald argues the trial court's use of the phrase "I *do not find* sufficient evidence" (emphasis added) in its decision shows there was no "finding" made to constitute a final judgment on the merits. We disagree.

¶ 65    A finding, or finding of fact, is "[a] determination by a judge, jury, or administrative agency of a fact supported by the evidence in the record, usu[ally] presented at the trial or hearing." Black's Law Dictionary (11th ed. 2019). Ronald cites *People v. Hipkins*, 97 Ill. App. 3d 174, 423 N.E.2d 208 (1981), to support his contention. However, *Hipkins* involves a *criminal* case in which a jury *was not asked* whether an aggravating factor existed; accordingly, the jury made no determination on the existence of the aggravating factor. *Id.* at 179-80. *Hipkins* is wholly irrelevant to a civil case in which the court makes a factual determination of the questions at issue after a full trial. Because the court made a final determination on the merits (which we note was affirmed on direct appeal), collateral estoppel applies.

¶ 66    Finally, collateral estoppel requires the party against whom estoppel is asserted be the same party or a party in privity. Here, collateral estoppel is asserted against Ronald, the plaintiff in both cases.

¶ 67        This matter has been thoroughly litigated through the courts of this state and the federal courts. Ronald has had a multitude of opportunities to present his claims, including during the lengthy trial in the rescission of trust case. That he is displeased with the result does not allow him to keep taking bites from the same apple. We conclude that the trial court properly dismissed Ronald's civil conspiracy claim under the doctrines of *res judicata* and collateral estoppel.

¶ 68                                III. CONCLUSION

¶ 69        For the reasons stated, we affirm the trial court's judgment.

¶ 70        Affirmed.